**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| JUAN ANTONIO CASTILLO<br><br>Plaintiff,<br><br>v.<br><br>RIO HONDO INDEPENDENT SCHOOL DISTRICT, EDDIE GUERRA, individually and in his official capacity as Rio Hondo ISD Board of Trustees President, and RAUL JAVIER TREVINO, individually and in his official capacity as Rio Hondo ISD Superintendent,<br><br>Defendants. | Case No. 1:26-cv-1140 |

**PLAINTIFF JUAN ANTONIO CASTILLO'S COMPLAINT**

Plaintiff Juan Antonio Castillo hereby submits this Complaint against Defendants Rio Hondo Independent School District ("Rio Hondo ISD" or the "District"), Eddie Guerra, and Raul Javier Trevino (collectively, the "Defendants") and states as follows:

## INTRODUCTION

Since the ratification of the First Amendment, Americans of every religious background have depended on their fundamental rights to freely practice their beliefs, speak freely, and abstain from speech with which they disagree. No state may intrude on an American's private conscience by coercing adherence to a particular religious tradition, officially favoring one religious denomination over another, or compelling a citizen to join in speech that contradicts their values.

The First Amendment safeguards the personal convictions of all Americans equally, including those whose belief system is not grounded in theism, such as Mr. Castillo.

Mr. Castillo is a Humanist; he is also a public-school educator of more than 25 years. As a Humanist, Mr. Castillo firmly maintains a nontheistic worldview with ethical values informed by reason, empathy, and scientific knowledge, and driven by a desire to meet the needs of people here and now. At the foundation of those values is an affirmation of the dignity of every human being.

This case is about Mr. Castillo's First Amendment rights. Defendant Rio Hondo ISD, acting through Superintendent Trevino and Board President Guerra—public-employer officials with authority over Mr. Castillo as an employee—repeatedly coerced Mr. Castillo into participating in sectarian prayer at mandatory, district-wide meetings over several years, even after he asked the District to stop. The District did not respect Mr. Castillo's worldview and paid no attention to his concerns. By ignoring Mr. Castillo's plea and continuously compelling religious observance contrary to his conscience, Rio Hondo ISD violated Mr. Castillo's rights, enshrined in the Establishment Clause, the Free Exercise Clause, and the Free Speech Clause. The First Amendment was born of a fear of precisely this kind of governmental coercion, and 42 U.S.C. § 1983 affords redress to citizens injured in their constitutional rights. Mr. Castillo now seeks to vindicate his rights in this Court.

## PARTIES

1. Plaintiff Juan Antonio Castillo is a natural person and a resident of Cameron County, Texas, where he was born and raised. Mr. Castillo taught at Rio Hondo Middle School from August of 2023 until June of 2026.

2. Defendant Rio Hondo ISD is a public independent school district in Cameron

County, Texas, serving more than 1,300 students[1] and employing hundreds of public servants[2] across Rio Hondo Elementary School, Middle School, and High School. Rio Hondo ISD may be served with process at 215 W. Colorado Street, Rio Hondo, Texas 78583.

3. Defendant Eddie Guerra ("President Guerra") is the President of the Rio Hondo ISD Board of Trustees and has served as a member of the Board since 2023. The Board is responsible for, among other administrative duties, "terminating the employment of district employees" like teachers.[3]

4. Defendant Raul Javier Trevino ("Superintendent Trevino") has served as Superintendent of Rio Hondo ISD since October 2022.

## JURISDICTION AND VENUE

5. Mr. Castillo brings this action pursuant to 42 U.S.C. § 1983 for violations of his civil rights under the First Amendment to the U.S. Constitution. Accordingly, this action presents a federal question within this Court's jurisdiction under Article III of the Constitution and 28 U.S.C. § 1331. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and (4) because Mr. Castillo seeks to redress the deprivation, under color of state law, of rights secured by the Constitution and to recover damages pursuant to federal civil rights statutes.

6. The Court is authorized to award the declaratory and injunctive relief requested by Mr. Castillo pursuant to 28 U.S.C. §§ 2201 and 2202.

---

[1] *Rio Hondo ISD*, The Tex. Trib., https://schools.texastribune.org/districts/rio-hondo-isd/#enrollment (last visited Aug. 7, 2026).
[2] *Search for Public School Districts: Rio Hondo ISD*, Nat'l Ctr. for Educ. Stat., https://nces.ed.gov/ccd/districtsearch (last visited Sept. 16, 2026).
[3] *Board Legal Status: Powers and Duties*, Rio Hondo Indep. Sch. Dist. Bd. Policy Manual.

7. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district, Defendant Rio Hondo ISD is located within this district, and the events giving rise to this action substantially occurred within this district.

## BACKGROUND AND FACTUAL ALLEGATIONS

### I. Defendants' Practice of Imposing Sectarian Prayer

8. Mr. Castillo has served as a public-school educator for more than 25 years. Beginning in August 2023, he taught at Rio Hondo Middle School, near where he was born and raised. There, he found a strong sense of community, built meaningful relationships with his students and their families, and enjoyed working alongside his colleagues from all backgrounds.

9. In addition to being a teacher and a father of five, he is a Humanist. Humanism is a nontheistic belief system centered on reason, compassion, and shared humanity.[4] Humanism affirms humanity's ability and responsibility to live ethically and pursue the greater good.[5] Though unmoored from supernatural beliefs, Humanism can serve the same psychological and social functions as other "traditional" religions in the lives of its adherents. Humanism provides a framework for understanding the nature and purpose of human existence, as well as principles to guide individual action. The tenets of Humanism are outlined in the Humanist Manifesto III, a text that aims to "manifest in clear and positive terms the conceptual boundaries of Humanism."[6] The Humanist movement is supported by a network of organizations and individuals. For example, there exist Humanist organizations that train

---

[4] *Definition of Humanism*, Am. Humanist Ass'n, https://americanhumanist.org/what-is-humanism/definition-of-humanism/ (last visited Aug. 7, 2026); *The Amsterdam Declaration*, Humanists Int'l, https://humanists.international/what-is-humanism/the-amsterdam-declaration/ (last visited Aug. 7, 2026).

[5] *Humanism and Its Aspirations: Humanist Manifesto III, a Successor to the Humanist Manifesto of 1933*, Am. Humanist Ass'n, https://americanhumanist.org/humanism/humanist-manifesto-iii/ (last visited Aug. 31, 2026).

[6] *Id.*

"celebrants" to conduct Humanist observances at life events such as weddings and memorials, as well as chaplains who represent Humanist values and principles in secular institutions such as hospitals.[7] Humanism also offers a valuable social dimension for adherents, many of whom regularly gather to celebrate Humanist holidays, engage in study, and build community.

10. Humanism is firmly committed to the exchange of ideas and to cooperation with those of different beliefs.[8] Though Mr. Castillo does not practice Christianity, he appreciates that Christianity provides a great source of guidance and fulfillment for many. Mr. Castillo believes that all religions should be respected, both by individuals and by the government. He cherishes Americans' First Amendment rights and holds firmly that no public employee should be coerced by the state to affirm religious beliefs which they do not share.

11. Rio Hondo ISD holds mandatory district-wide, all-staff meetings in August, December, and May of each academic year. Superintendent Trevino leads these meetings, which President Guerra and several other Board members attend. The meetings are held during school hours and on school property, oftentimes at the Rio Hondo High School cafeteria. Mr. Castillo was required to attend these mandatory, district-wide meetings during his three years as a Rio Hondo ISD employee.

12. The stated purpose of these meetings is to set out Rio Hondo ISD's expectations for staff for the coming year and to review each semester's academic progress and staff performance at its close. Yet, Superintendent Trevino and President Guerra have regularly exploited these ostensibly professional meetings to coerce their subordinates into sectarian

---

[7] *Humanist Celebrants*, The Humanist Soc'y, https://thehumanistsociety.org/our-endorsements/humanist-celebrant/ (last visited Aug. 31, 2026); *Humanist Chaplains*, The Humanist Soc'y, https://thehumanistsociety.org/our-endorsements/humanist-chaplain/ (last visited Aug. 31, 2026).

[8] *The Amsterdam Declaration*, Humanists Int'l, https://humanists.international/what-is-humanism/the-amsterdam-declaration/ (last visited Aug. 7, 2026).

religious prayer. Mr. Castillo raised concerns about the practice, but the District paid no attention. Every mandatory, district-wide meeting Mr. Castillo attended continued to prominently feature exclusively Christian prayer.

13. Without giving staff any advance notice that the mandatory meetings would include religious observances, Superintendent Trevino and President Guerra took turns opening each meeting with an explicitly evangelical Christian prayer. One or the other commenced each meeting by calling everyone present to rise. Once staff members were standing, Superintendent Trevino or President Guerra instructed them to bow their heads and join in prayer. The group prayer began immediately, with no opportunity for any staff member to excuse themselves from the room. A second prayer, also without advance notice or an opportunity to opt out, often followed later in the meeting. These prayers put staff who did not wish to participate in an untenable situation. Leaving the room once the prayers had begun, or even remaining seated, would have been conspicuous and drawn the attention of colleagues and the very employers leading the prayers. Staff members like Mr. Castillo were thus forced to choose between violating their own religious conscience and being singled out and subjected to retribution.

14. Each time Superintendent Trevino or President Guerra called the staff to prayer, Mr. Castillo agonized over whether to betray his sincerely held religious beliefs or make himself vulnerable to ostracism or professional consequences. What should have been ordinary staff meetings to prepare for the academic year in the job he loved became a source of profound distress. Over the course of three years, Defendants' continued imposition of prayer became unbearable.

15. These prayers were neither sect-neutral nor inclusive of other faiths.

Superintendent Trevino and President Guerra consistently invoked the "heavenly father" and Jesus Christ specifically. Despite the multifaith composition of the Rio Hondo ISD staff, Superintendent Trevino and President Guerra only recited prayers from the perspective of their own faith (evangelical Christianity) and never invited anyone from other faith traditions to offer their own religious messages. Mr. Castillo felt coerced to participate, despite deep personal conflict and objection, and excluded from the District both as an educator and as a parent.

16. Staff were never told that participation in the prayers was optional, and nothing about the meetings suggested that attendees could refuse. Mr. Castillo and others were given no opportunity to excuse themselves or to decline to participate, even though many did not share the denominational beliefs their superiors required them to manifest. Employees also could not inconspicuously leave the room before or during prayers without fear of retribution. Anyone who tried to leave would draw the attention of other attendees, including the Board and Superintendent. Mr. Castillo voiced his objections and asked that employees be allowed to opt out, but Superintendent Trevino and President Guerra ignored his request.

17. Because participation in the district-wide meetings was mandatory, Superintendent Trevino's and President Guerra's conduct routinely forced Mr. Castillo and all other District employees to engage in sectarian prayer as a condition of their employment with Rio Hondo ISD. The District's administration and Board of Trustees, by attending the meetings and participating in the prayer, made clear to staff that their participation was expected and required. When Mr. Castillo raised concerns that Rio Hondo ISD was impermissibly mandating religious observance, his concerns were dismissed and he was told that prayer "doesn't hurt anyone." At no point did Defendants acknowledge that compulsory

prayer did hurt staff members, including Mr. Castillo, for whom participation violated a sincerely held religious belief.

18. Unlike other school districts that have employed Mr. Castillo, Rio Hondo ISD provides no training for administrators or staff on the legal limits governing forced religious expression and practice. The Texas Association of School Boards recommends that districts provide staff development training "as to what is permissible under law" regarding prayer in public schools, but on information and belief, Rio Hondo ISD has neglected to do so.[9]

19. The failure to train staff—and, indeed, the District's active disregard of violations of the Constitution, federal law, and state guidance—directly produces impermissible religious discrimination. Although Rio Hondo ISD's Employee Handbook purports to incorporate Section 247.2 of the Texas Code of Ethics, which provides that educators, including superintendents, "shall not discriminate against *or coerce* a colleague on the basis of . . . religion," the Board's participation in and approbation of Superintendent Trevino's and President Guerra's conduct flouts the State's instruction and renders the District's facial adoption of that provision a dead letter.[10] Rio Hondo ISD likewise ignores the U.S. Department of Education's guidance on religious expression and prayer in public schools, which makes clear that school officials may not, in their official capacities, direct or lead prayer or engage in religious expression "as part of the official activity of the school itself."[11]

---

[9] TEX. ASS'N OF SCH. BDS., SCHOOL DISTRICT TRAINING CHART 37 (2024); *see also* Tex. Educ. Code § 21.451(g) ("The staff development may include instruction as to what is permissible under law, including opinions of the United States Supreme Court, regarding prayer in public school.").

[10] RIO HONDO INDEP. SCH. DIST., EMPLOYEE HANDBOOK 43 (2025) (emphasis added); 19 Tex. Admin. Code § 247.2(2)(E) (prohibiting educators from discriminating or coercing against colleagues on the basis of religion); 19 Tex. Admin. Code § 247.1(e)(7) (defining the term "[e]ducator" as "[a] person who is required to hold a certificate issued under the Texas Education Code, Chapter 21, Subchapter B."); Tex. Educ. Code § 21.046 (setting certification qualifications for superintendents).

[11] U.S. DEP'T OF EDUC., GUIDANCE ON CONSTITUTIONALLY PROTECTED PRAYER AND RELIGIOUS EXPRESSION IN PUBLIC ELEMENTARY AND SECONDARY SCHOOLS 3, 8 (Feb. 5, 2026) (Public school officials and employees are "permitted to pray while at work on the same terms as students, unless such prayer acts to coerce others into joining in or affirming their prayer or functions as the official speech of the school as an institution.").

## II. The Religious Posters and Subsequent Demand Letter

20. As a result of Rio Hondo ISD's failure to adequately train its leadership and its indifference to the rights and concerns of its staff, Mr. Castillo was subjected to further instances of school-sponsored Christian religious expression and denominational discrimination, beyond the nine district-wide meetings he was required to attend.

21. In October of the 2025–26 school year, Rio Hondo Middle School prominently displayed two unsigned posters on school walls, each citing Jeremiah 29:11 and bearing the quotations "as long as God keeps waking you up He still has a Plan For you" and "as long as God keep waking you up He still [sic]." The posters were displayed in the same space the school ordinarily uses for announcements, rules, mottos, and other official messages.

22. Mr. Castillo learned of these posters from school parents who expressed their surprise and discomfort at seeing religious messages displayed on public school property. As a teacher and a school parent himself, Mr. Castillo was concerned by the school's apparent adoption of a specific religious viewpoint. Seeing an explicitly Christian message promoted by the school where he taught and enrolled his child made Mr. Castillo feel marginalized and unsure about his family's place in the community.

23. Mr. Castillo emailed the Rio Hondo Middle School principal explaining that the sectarian posters constituted state preference of a religious viewpoint and violated the constitutional principle of the separation of church and state. The principal initially removed the posters, but he later restored them on Superintendent Trevino's instruction.

24. When Mr. Castillo's objection was again dismissed, he sought legal assistance from the American Humanist Association ("AHA"), a non-profit educational organization dedicated to defending civil liberties, secular governance, scientific integrity, and social

justice.[12]

25. Through the Appignani Humanist Legal Center, the legal wing of the AHA, Mr. Castillo sent a demand letter (the "Letter") to Superintendent Trevino in February 2026 identifying the constitutional violations arising from both the posters and the sectarian prayers at mandatory, district-wide meetings, including the Christian prayer at the most recent school year kickoff meeting. The Letter informed Superintendent Trevino that, while the constitutionality of any type of public-school prayer was a dubious proposition, state employees who lead public prayer must ensure that it is non-discriminatory and free from coercion, at the very least. The Letter asked that the posters be removed and that Rio Hondo ISD adopt, disseminate, and abide by a public prayer policy that conforms to the United States Constitution.

26. Rio Hondo ISD did not respond to the Letter. The posters were eventually removed in March following the principal's direction to take down *all* literature displayed over the course of the year, including posters related to student clubs and athletics. The District ignored the Letter's other requests and failed to disclose its policy on sectarian prayers led by state employees in their public capacity or to clarify whether such a policy had been adopted.

27. In another instance of the District's denominational discrimination, Superintendent Trevino required a high school teacher to remove broad, pluralistic religious messages from his classroom wall. Superintendent Trevino's directive was hardly a denomination-neutral attempt to preserve the secular nature of public-school facilities, as it came at the same time that Rio Hondo ISD displayed the Ten Commandments in each classroom. In addition, other teachers were allowed to display crosses and Bible verses in their

[12] *Join the American Humanist Association*, Am. Humanist Ass'n, https://americanhumanist.org/wp-content/uploads/2020/11/315-20-E_HumanismforAll_sm.pdf (last visited Aug. 7, 2026).

classrooms without issue. By instructing the removal only of the pluralistic displays, Superintendent Trevino exhibited unmistakable intolerance toward disfavored spiritual views and discriminated against teachers on the basis of their religious viewpoints.

**III. Defendants' Continued Group Prayers**

28. Mr. Castillo's work environment worsened following the Letter. When Mr. Castillo emailed the District's HR Department to ask for guidance, he received no response. Faced with Defendants' persistent violations of the First Amendment and refusal to address his concerns, Mr. Castillo concluded that he could not remain in his position without compromising his deeply held Humanist beliefs. He ultimately made the difficult decision to resign, effective at the close of the school year.

29. On the last day of school, in May 2026, Mr. Castillo attended the final mandatory district-wide meeting of the academic year. Several members of the Board of Trustees were present. Once again, Superintendent Trevino commenced the meeting by instructing all staff to stand, bow their heads, and join in an evangelical Christian prayer. Staff were again provided with no advance notice, no opportunity to opt out, and no invitation to share messages from other belief systems.

30. On information and belief, Superintendent Trevino and President Guerra have continued to lead sectarian prayer at mandatory staff meetings since Mr. Castillo's resignation. At the opening meeting of the 2026–2027 academic year, an evangelical Baptist preacher was also invited to proselytize to staff.

31. As a result of this pervasive practice, Mr. Castillo feels that he cannot seek employment within Rio Hondo ISD without being forced to sacrifice his right to abstain from religious exercise. He is now employed by Corpus Christi Independent School District, several hours away from his home and family. Although he felt at home within the Rio Hondo ISD

community, he does not believe he can return without feeling coerced to observe an evangelical Christian-based belief system and thereby violate the dictates of his own conscience.

32. As the final policymaking authority for Rio Hondo ISD, the Board of Trustees' awareness of and participation in coerced prayers led by the District's senior officials at mandatory staff meetings subject Rio Hondo ISD to liability under 42 U.S.C. § 1983. By leading and permitting coercive sectarian prayers, President Guerra made the practice official district policy. The Board's continued acquiescence following Mr. Castillo's Letter further constitutes a deliberate choice to permit the practice of mandatory prayer from only one faith tradition, as shown by Superintendent Trevino's conduct at the final staff meeting. Rio Hondo ISD is therefore subject to municipal liability under 42 U.S.C. § 1983 based on its official policy and its continued practice. In addition, or in the alternative, Rio Hondo ISD is liable for the denominational staff prayers because their persistence, similarity, and frequency make the practice a *de facto* official policy. Rio Hondo ISD is likewise liable for failing to train Superintendent Trevino on his legal duty not to violate the constitutional rights of or discriminate against staff. That failure to train rises to the level of deliberate indifference and so constitutes an official policy to which liability attaches under 42 U.S.C. § 1983 because Board members are fully aware of—and indeed participate in—Superintendent Trevino's persistent sectarian group prayers at mandatory staff meetings.

33. Mr. Castillo now seeks to vindicate his rights under the First Amendment as a Humanist and American citizen entitled to protection from coercive, state-sponsored religious practices and denominational discrimination.

## COUNT I

**Violation Of First Amendment—Establishment Clause**

**(U.S. Const. amend. I; 42 U.S.C. § 1983)**

34. Plaintiff re-alleges and incorporates by reference all the above paragraphs as if they were fully set forth herein.

35. The Establishment Clause of the First Amendment guarantees that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I.

36. The government may not coerce religious practices or officially favor one religious tradition over another. Defendants repeatedly did both. Their conduct arose in the inherently coercive context of public-employer officials with authority over staff giving instruction at mandatory meetings. As alleged herein, Defendants, state employers, called their employees to mandatory meetings and, without warning, instructed those employees to stand, bow their heads, and pray. Mr. Castillo could not inconspicuously excuse himself without drawing Superintendent Trevino's or President Guerra's attention, and he reasonably feared that refraining from prayer could result in professional consequences, including wrongful discipline, termination, or the withholding of a favorable reference.

37. To maintain denominational neutrality, states are forbidden from granting special benefits, privileges, or advantages to members of favored religious groups. State agencies likewise may not discriminate against those who choose not to express a religious belief. Defendants engaged in impermissible discrimination by requiring staff to participate in exclusively sectarian practices. Superintendent Trevino's and President Guerra's supplication to the "heavenly father" and Jesus Christ in each prayer platformed Christian beliefs to the exclusion of all others, including Humanism. This conduct went beyond mere exposure to certain religious ideas. Mr. Castillo's state employer instructed him and his peers to affirm the

same religious stance, even if they held a minority viewpoint or one not favored by the state. This is precisely the type of religious state favoritism the founders feared. By instructing staff to rise, bow their heads, and join in exclusively evangelical Christian prayer, Superintendent Trevino and President Guerra signaled to members of other religions that their beliefs are neither acknowledged nor respected. This state-imposed religious ostracism flagrantly violates the Establishment Clause on that basis alone.

38. Defendants' conduct is particularly offensive because it veers sharply from the historical and traditional role of religion in American governance. The Establishment Clause is interpreted according to the historical practices prevalent at the time of founding and the understandings held by the framers. Here, Defendants' conduct is unsupported by historical practices or understandings of the First Amendment. State employers required state employees to attend mandatory meetings, ostensibly called to facilitate the state's civic role in educating children, at which they instructed attendees to participate in formal religious exercise that was strictly denominational in nature, without regard to their diverse personal views. Compulsion to affirm one particular sect, through the state's instruction that employees stand, bow their heads, and join in prayer, constitutes a textbook establishment as it would have been regarded by the founding generation.

39. If Defendants did not intend to establish their favored religion as the government's in their roles as state leaders, they would have allowed members of other faiths to offer their own invocations. Defendants did not do so, instead coercing employees to participate in their chosen religion.

40. Lastly, Defendants led prayers pursuant to their official duties because they did so during regularly scheduled mandatory, district-wide meetings held to discuss Rio Hondo

ISD's expectations and staff work. Superintendent Trevino and President Guerra commenced group prayer during mandatory meetings held for the purpose of staff instruction. Accordingly, Defendants are bound by the limitations the First Amendment places on the state's imposition of religious observances.

**COUNT II**

**Violation Of First Amendment—Free Exercise Clause**

**(U.S. Const. amend. I; 42 U.S.C. § 1983)**

41. Plaintiff re-alleges and incorporates by reference all the above paragraphs as if they were fully set forth herein.

42. The Free Exercise Clause guarantees that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I.

43. Core to the Free Exercise Clause is the right to express one's religious beliefs. Accordingly, the right to abstain from religious practice is as fully protected as the right to participate. The state violates the Free Exercise Clause when it infringes upon a citizen's right to abstain from expression incongruent with his or her own religious conscience. As alleged above, Superintendent Trevino and President Guerra began mandatory staff meetings by instructing staff to participate in a denominational Christian prayer. Defendants gave Mr. Castillo no advance notice that they would commence religious worship and provided him no opportunity to exercise his constitutional right to abstain. Mr. Castillo requested an opt-out in the Letter, but the District never granted the request or even responded to it.

44. Defendants substantially burdened Mr. Castillo's right to express himself in accordance with his personal religious views. Humanism is a fundamentally nontheistic religion. Forcing Mr. Castillo to take part in Christian devotional practice therefore grossly infringes upon a core tenet of his sincerely held beliefs and his right to abstain from theistic

expression. By regularly holding evangelical Christian group prayer at meetings that he was required to attend, and by failing to give him and other attendees the option to excuse themselves, Defendants made Mr. Castillo an unwilling participant in an explicitly theistic sectarian group exercise, contrary to his personal nontheistic religious views and objections to personal participation in coerced prayer.

45. Defendants can point to no plausible justification—much less a compelling government interest—for forcing their public employee subordinates to pray or make particular religious expressions at mandatory staff meetings. When previously asked for a rationale, Rio Hondo ISD simply responded that coerced prayer "doesn't hurt anyone." Even if a compelling governmental interest existed in compulsory, sectarian prayer for these public-school employees, Defendants did not pursue that interest through the least restrictive means. At a minimum, to meet the requirements of the Free Exercise Clause, Defendants should have allowed attendees to inconspicuously opt out of the prayer or offered them an opportunity to share a message from their own religious tradition. Instead, they imposed sectarian prayer on Mr. Castillo and every other staff member without regard to their personal beliefs, convictions, or constitutional rights.

46. Rio Hondo ISD's religious coercion is systemic, reaching staff throughout the District. This practice, repeatedly affirmed by the Board, therefore extends beyond the violation of any one employee's free exercise rights. Because Mr. Castillo was one of the Rio Hondo ISD staff members whose right to abstain from religious exercise was infringed, he is entitled to seek redress under the Free Exercise Clause.

# COUNT III

## Violation Of First Amendment—Freedom of Speech

## (U.S. Const. amend. I; 42 U.S.C. § 1983)

47. The Free Speech Clause guarantees that "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I.

48. The Free Speech Clause works in tandem with the Free Exercise Clause. Where the Free Exercise Clause protects religious exercise in all forms, the Free Speech Clause affords additional protection to expressive religious conduct. Here, Defendants compelled Mr. Castillo to engage in expressive religious practice while acting as his public employer.

49. The Free Speech Clause protects against compelled speech contrary to an unwilling speaker's personal convictions. Government officials may not coerce a citizen to express political or religious beliefs he or she does not hold. That principle also prohibits a public employer from requiring an employee to participate in religious expression when they would prefer to remain silent. The First Amendment extends further to prohibit government intrusion upon a citizen's personal conscience. A public employer violates that protection when it forces an employee to engage in religious expression that conflicts with the employee's deeply held beliefs.

50. The First Amendment's protections furthermore encompass both audible speech and expressive conduct. Defendants violated the free-speech rights of Mr. Castillo by compelling his participation in sectarian expression without regard to his contrary personal beliefs. The compelled participation was not passive: Rio Hondo ISD's public-employer officials instructed their subordinates to stand and bow their heads. With no opportunity to excuse himself, Mr. Castillo was forced to engage in expressive conduct that contradicted his

deeply held beliefs, regardless of whether he audibly joined any recitation. Such direct compulsion by a public employer violates the Free Speech Clause.

## CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, Mr. Castillo respectfully requests that judgment be entered in his favor and against Defendants, awarding the following relief:

(A) an order declaring that Defendants violated the First Amendment to the United States Constitution;

(B) a permanent injunction of Defendants' existing policy of prayer at staff meetings;

(C) compensatory or, in the alternative, nominal damages for the violation of Plaintiff's protected rights, including his rights to Free Exercise, Free Speech, and to be free from state religious establishment;

(D) an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(E) all other and further relief to which Plaintiff may be entitled.

Date: October 28, 2026

Respectfully submitted,

*/s/ William David Marsh Jr.*

William David Marsh Jr.
Attorney-in-Charge
Texas Bar No.: 24092762
SDTX Bar No.: 3352950

**ALLEN OVERY SHEARMAN STERLING US LLP**
2601 Olive Street, Floor 17
Dallas, TX 75201
billy.marsh@aoshearman.com
(214) 271-5348

Noah A. Brumfield
D.C. Bar. No.: 488967
**ALLEN OVERY SHEARMAN STERLING US LLP**
1101 New York Avenue NW
Washington, DC 20005

noah.brumfield@aoshearman.com
(202) 683-3847

Camden Covert
Texas Bar No.: 24132543
SDTX Bar No.: 3929602
Nathan Romo
Texas Bar No.: 24137164
SDTX Bar No.: 3879373
**ALLEN OVERY SHEARMAN STERLING US LLP**
300 West 6th Street, Suite 2250
Austin, TX 78701
camden.covert@aoshearman.com
(512) 755-0919
nathan.romo@aoshearman.com
(512) 647-1929

Andrew Shaeffer *(pro hac application forthcoming)*
New York Bar. No.: 6239719
**ALLEN OVERY SHEARMAN STERLING US LLP**
599 Lexington Avenue
New York, NY 10022
andrew.shaeffer@aoshearman.com
(646) 988-6986

Rhonda Hassan *(admission pending)*
**ALLEN OVERY SHEARMAN STERLING US LLP**
800 Capitol Street, Suite 220
Houston, TX 77002
rhonda.hassan@aoshearman.com
(832) 707-8410

Amitai Heller *(pro hac application forthcoming)*
Oregon Bar No.: 221539
Alexandria S. Huiskens *(pro hac application forthcoming)*
Illinois Bar No.: 6332836

**AMERICAN HUMANIST ASSOCIATION**
1821 Jefferson Place NW
Washington, DC 20036
legal@americanhumanist.org
(202) 851-7625

*Attorneys for Plaintiff Juan Antonio Castillo*